[Civ. No. 13432.   Second Dist., Div. Three.   June 14, 1942.]

KENNETH ZWERIN et al., Appellants, v. RIVERSIDE CEMENT COMPANY (a Corporation) et al., Respondents.

Kenneth C. Zwerin in pro per. and William F. Heron for Appellants.

Jennings & Belcher and Louis E. Kearney for Respondents.

SHAW, J. pro tem.—This action was brought by the plaintiffs to recover damages for personal injuries received by them in a collision between a De Soto automobile owned and driven by the plaintiff Kenneth Zwerin and a truck owned by the defendant corporation and driven by defendant Maxie. The complaint was based on negligence of Maxie, alleged to be the employee of the corporation. The plaintiff Kenneth Zwerin sought also a recovery for damage to his automobile. The defendants denied all the allegations of the complaint, and pleaded contributory negligence of plaintiff Kenneth Zwerin, alleging also that he was acting as the agent of plaintiff Doris Zwerin. The jury returned a verdict in favor of defendants, on which judgment was entered, and plaintiffs appeal from this judgment.

The appellants concede that the trial court made no errors in ruling on evidence or instructing the jury, their only point being that the evidence is insufficient to support the verdict. They contend that the evidence establishes, as a matter of law, that the defendant Maxie was negligent and that the plaintiff Kenneth Zwerin was not negligent. The plaintiff Doris Zwerin is the mother, and on the occasion in question was the guest, of the plaintiff Kenneth Zwerin, and no ground appears on which his negligence, if any, can be imputed to her. The defendant Maxie, it was stipulated, was acting as employee of defendant corporation and driving its truck at the time of the accident. If the evidence is sufficient to support the jury's implied finding that Maxie was not guilty of any negligence which was a proximate cause of the accident the judgment must be affirmed as to both plaintiffs; otherwise it must be reversed as to plaintiff Doris Zwerin at least. We therefore address ourselves first to the question of Maxie's negligence. In passing upon it we follow the established rule on appeal, considering only the evidence which favors the verdict, resolving all conflicts in the evidence against the appellants, and where conflicting inferences can reasonably be drawn, even from undisputed facts, accepting those which tend to support the verdict. On such a view of the evidence the following facts appear:

■ The collision happened at about 3 p. m. on a rainy day, October 25, 1940. Both the vehicles involved had windshield wipers in operation, and it does not appear that the rain interfered with the vision of either driver. The scene of the collision was the intersection of Lankershim Boulevard and San Fernando Road. San Fernando Road here runs approximately northwest and southeast and Lankershim Boulevard, running approximately north and south, intersects it from the south but does not continue to the north. San Fernando Road was at the time of the collision a regularly established through highway and a stop sign such as is prescribed by law was located on Lankershim Boulevard about forty feet back of the curb line of San Fernando Road. Plaintiff Kenneth Zwerin was driving his De Soto car northerly on Lankershim Boulevard, intending to turn northwesterly on San Fernando Road, and as he approached San Fernando Road he slowed down but did not come to a complete standstill at the edge of San Fernando Road. He kept on coming very slowly, at a speed of about four or five miles per hour. Defendant Maxie was driving southeasterly on San Fernando Road, with an empty cement truck to which was attached an empty trailer, both together weighing about 25,000 pounds and having a combined length of forty-five or fifty feet. Both had air brakes. Maxie was driving about thirty-five miles per hour as he approached Lankershim Boulevard, and at a distance of about 200 feet from it he saw the De Soto approaching on Lankershim Boulevard and applied his brakes and kept them applied a little, slowing down to about thirty miles per hour. As the De Soto approached, San Fernando Road was clear of north-bound traffic for several hundred feet to the southeast, so that the car could have crossed San Fernando and turned northwesterly without interference from traffic coming from the southeast. Maxie testified to the events leading to the collision in these words: "A. Well, I was coming down San Fernando Road towards Los Angeles, home, and I seen this car approaching up Lankershim Boulevard, and he was coming very slow, and I swung towards the middle lane to clear him, and he kept coming out and I got pretty close to him, and I thought he was going to go; and so I started to swing behind him, to clear him behind, and he stopped dead still, and I hit him. Q. At the time he brought his car to a stop, where was he with reference to the path of travel of your truck? A. Right

in the road of it." At the time the De Soto thus stopped, Maxie, whose truck was then about ten feet away, applied his brakes fully, in an effort to stop, but was unable to do so in time to avoid a collision.

Upon the foregoing facts and the reasonable inferences which may be drawn from them, Maxie cannot be held negligent as a matter of law. In reaching this conclusion we give considerable weight to the fact that San Fernando Road, on which he was proceeding, was a regularly established through highway, with a proper sign at the intersection of Lankershim Boulevard. The duties and rights of the respective parties as affected by that fact are thus declared in sections 552 and 577 of the Vehicle Code, as they stood at the time of the accident: "The driver of any vehicle which has stopped as required by this code at the entrance to a through highway shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but said driver having so yielded may proceed and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicle so about to enter or cross the through highway." (Sec. 552.) "The driver of any vehicle upon approaching any entrance of a highway or intersection signposted with a stop sign as provided in this code, except as otherwise permitted or directed in this code, shall stop before entering the nearest crosswalk or, if none, then at a limit line when marked, otherwise before entering such highway or intersection." (Sec. 577.) It does not appear that there was either crosswalk or marked limit line at this intersection; hence the proper place for stopping the De Soto, under section 577, was "before entering" San Fernando Road. Section 552 establishes quite different rules regarding the right of way from those governing ordinary intersections, and its applicability here furnishes sufficient ground for distinguishing cases cited by appellants which involved collisions at ordinary intersections. Maxie testified that his truck entered the intersection at approximately the same time as the De Soto. If its entry preceded that of the De Soto, by even an instant of time, section 552 would give him the right of way; but even if his truck was not in the intersection before the De Soto, Maxie still had the right of way if the truck was approaching so closely on San Fernando Road as to constitute an immedi-

ate hazard when the De Soto entered the intersection. The rights of the driver of the De Soto were no better for not stopping at the through highway than they would have been if he had stopped. (See *Inouye* v. *McCall*, (1939) 35 Cal. App. (2d) 634, 638 [96 P. (2d) 386].) ██ The question whether an approaching vehicle constitutes an immediate hazard is ordinarily one of fact concerning which the jury's conclusion is binding on appeal. (*Wilkinson* v. *Marcellus*, (1942) 51 Cal. App. (2d) 630, 633 [125 P. (2d) 584]; *Hodges* v. *McCullom*, (1941) 47 Cal. App. (2d) 41, 44 [117 P. (2d) 44]; *Pattisson* v. *Cavanagh*, (1936) 18 Cal. App. (2d) 123, 126 [63 P. (2d) 868, 64 P. (2d) 945]; *Galway* v. *Guggolz*, (1931) 117 Cal. App. 639, 642 [4 P. (2d) 290].) We think it must be so regarded here.

██ It may be that, on the rule of "the last clear chance," the one who constitutes an immediate hazard and so has the right of way should nevertheless slow down or otherwise seek to avert a collision when it appears to him that one is impending, but no violation of such a duty appears here. After plaintiff stopped in front of defendant it was impossible for the latter to avoid the collision. Before plaintiff stopped there was no such apparent danger of a collision as would necessarily cast on defendant the duty of trying to avoid it by any other means than those he took. He did swerve, first to the left, then to the right, in the expectation of avoiding plaintiff, and testifying of his efforts in this respect Maxie said: "If he continued at the speed he was traveling, I would have went behind him." This may be, as appellants say, a mere conclusion and not evidence; but if so it is a conclusion which the jury might reasonably have reached from the evidence before them, and supports their finding that Maxie was not negligent. There appears to have been a dodging contest between plaintiff Kenneth Zwerin and Maxie, such as often arises in similar situations, each endeavoring to avoid the other but actually getting in his way instead, and the question, which of them should have sensed the true situation in time to avert the collision, was, under the circumstances, one for the jury.

This conclusion renders it unnecessary for us to consider the question of contributory negligence of plaintiff Kenneth Zwerin.

The judgment is affirmed.

Schauer, P. J., and Shinn, J., concurred.